## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ADVANCED CABLE TIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| AMERICAN ELITE MOLDING, LLC, | ) | |
| f/k/a BAY STATE CABLE TIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COMPLAINT AND JURY DEMAND

Plaintiff Advanced Cable Ties, Inc. ("ACT"), as and for its Complaint against American Elite Molding, LLC, formerly known as Bay State Cable Ties, LLC ("AEBS"), alleges upon knowledge, information and belief as follows:

### Nature of the Action

1.     There is perhaps no more broadly respected standard in American manufacturing than the proud assurance that a product is indeed "Made in the USA."  AEBS has denigrated that standard by peddling counterfeit imports, defrauding customers, undercutting honest competitors, and duping even the U.S. military.  As one of those competitors, ACT has been— and continues to be—victimized by AEBS, and has uncovered facts establishing AEBS's ongoing violations of the Lanham Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), Massachusetts common law, and the Florida Deceptive and Unfair Trade Practices Act. Specifically, ACT brings this action to hold AEBS accountable for its well-concealed and burgeoning pattern of fraudulent importing, labeling and marketing of cable ties supposedly manufactured in Florida but in truth channeled to AEBS through intermediaries which buy them

from undisclosed Asian suppliers.  By passing off these cheaper and inferior foreign cable ties as "Made in the USA," AEBS has deceived private customers and the U.S. government, which purchase millions of cable ties each year and often take country of origin into account in making purchasing decisions.  Further, AEBS has used its ill-gotten profits to wrongfully "subsidize" below-market bids on subsequent contracts, thus perpetuating its unfair competition and multiplying its undeserved revenues.  On the facts particularized below and to be corroborated once the exact dimension of AEBS's misconduct is revealed through this action, ACT asks this Court to put an end to AEBS's predation, and to award ACT compensatory damages, mandatory treble damages, injunctive relief, and its costs and attorneys' fees.

## Summary of the Claims

2.      ACT, founded in Worcester County, Massachusetts and headquartered in Gardner, Massachusetts, is an American success story.  When Kenneth Tomasetti and his wife Donna started ACT in 1994, they envisioned a business that sold quality products, made in Massachusetts, by respected employees who proudly provide exceptional customer service.  By their hard work and steadfast focus, the Tomasettis have achieved that and more.

3.      Over the last 20 years, ACT has built a national reputation as a leading, full-line manufacturer of American-made cable ties.  Cable ties hold together items such as electric cables or wires, offering a range of applications from household to military uses.  ACT employs over 120 people at its recently expanded 112,000-square-foot facility in Gardner, and sells to a wide range of customers, including private companies, the U.S. military, and other government entities.

4.      ACT prides itself on fulfilling over 98% of its orders for cable ties with ties made in its Gardner facility.  Because of this commitment, ACT's prices are often higher than those of

competitors which import cable ties from overseas.  What ACT loses in competitive pricing,

however, it gains in higher quality and the hard-earned trust of its customers that the cable ties

they receive are indeed made in the USA.  ACT also fully complies with customer requirements,

including those of the U.S. government, mandating that products be manufactured in the USA.

5.      ACT is equally committed to candor in its advertising and comprehensive service

to its customers.  To meet certain of those customers' needs, ACT does distribute some unusual

designs and sizes of cable ties and some ancillary products made in Taiwan, but ACT takes care

to clearly differentiate—in its communications with customers and on its website—these

comparatively few foreign products from the broad line of cable ties ACT manufactures in

Gardner.

6.      AEBS is a direct commercial competitor of ACT in the wholesale manufacture

and sale of cable ties for U.S. government, U.S. military, and other non-governmental customers.

7.      AEBS trumpets that all of its cable ties are made in the USA and that it produces

1.5 *billion* cable ties per year at its single manufacturing site in Crestview, Florida.  Indeed,

AEBS publicly pledges its ostensible commitment "to keeping all production in the U.S."  Every

page of its website, every page of its catalog, and even the sign outside its manufacturing facility

in Crestview proclaims that all of its products are made in the United States.  **This is a lie.**  As

recently as June 2016, AEBS imported millions of ties from Taiwan consisting of almost 700

cartons—weighing 7.6 metric tons—of what it described as "Wiring Accessories."

8.      In truth, AEBS cannot and does not produce the volume and variety of cable ties

it sells in its lone manufacturing facility in Florida.  Instead, it relies on overseas manufacturers

to fulfill many of its orders.  To trick consumers and competitors alike, on information and

belief, AEBS engages in deceptive practices including causing these foreign-made cable ties to

be repackaged or relabeled to mislead customers into believing that AEBS had manufactured the ties at its Crestview facility, here in the United States.  In some instances, AEBS even directs the overseas manufacturer to use AEBS's own logo and packaging, so that the counterfeit cable ties are shipped to the United States already bearing false "made in the USA" markings to wrongly suggest that they supposedly were made in the United States.

9.      AEBS's conduct is unfair, deceptive, unconscionable, and oppressive.  It deceives customers, many of which are required to purchase American-made products under their commitments to or subcontracts with their own customers.  AEBS deceives the U.S. government, which purchases millions of cable ties a year and often is required by law to take the country of origin into account in purchasing decisions.  AEBS foists on the American military inferior foreign products which are not subject to the same quality control as ties made in the USA and thus suffer by comparison on two key characteristics:  tensile strength and durability.  And AEBS has harmed—and continues to harm—not only ACT but also other cable tie manufacturers who are unfairly forced to compete with AEBS for customers who specifically want to purchase cable ties that are manufactured in the USA.

10.     AEBS has acted through a concealed and continuing pattern of fraudulent and predatory conduct, the full contours of which are not yet known, but which includes: secretive relationships with overseas cable tie manufacturers to import and mislabel counterfeit cable ties; wrongful instructions to employees to stay silent about the misconduct they observe at the AEBS Crestview facility; and an arrangement to secretly funnel imported cable ties through at least one other related entity, Cable Tie Express, LLC, which admittedly purchases cable ties from overseas and which is owned and controlled by the owner of AEBS.

11.     ACT, other cable tie manufacturers, the U.S. government and many customers of AEBS are all its victims.  By its actions, AEBS has violated the Lanham Act, the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Florida Deceptive and Unfair Trade Practice Act (which gives life to the Federal Trade Commission regulations prohibiting such conduct), and Massachusetts common law.  ACT therefore seeks: compensatory, statutory, and treble damages; injunctive relief; mandatory treble damages; and its costs and attorneys' fees incurred in pursuing this action.

## PARTIES

12.     Plaintiff ACT is a corporation organized under the laws of the State of Delaware, with its principal place of business at 245 Suffolk Lane, Gardner, Massachusetts.

13.     Defendant AEBS is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 5680 John Givens Road, Crestview, Florida.  AEBS operated as Bay State Cable Ties, LLC until on or about June 2016.  From 2001 until approximately February 8, 2007, Bay State Cable Ties, LLC was a Massachusetts limited liability company.   AEBS is and has been owned and operated by Robert Sires, who is also the controlling owner of at least two separate cable tie suppliers, Cable Tie Express, LLC and BuyCableTies.com LLC, as well as a plastic injection molding company, Technology Plastics LLC.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount presently in controversy exceeds $75,000, exclusive of interests and costs.

15.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1121, and 18 U.S.C. § 1964(c).

16.     This Court has supplemental jurisdiction over ACT's state law claims pursuant to 28 U.S.C. § 1367(a).

17.     This Court has personal jurisdiction over AEBS because (1) the actions in this case arise at least in part out of AEBS's transaction of business in the Commonwealth, including but not limited to offering its products to Massachusetts customers and contracting to supply goods in this Commonwealth; (2) AEBS's actions complained of herein are causing injury to ACT in the Commonwealth; and (3) AEBS regularly does business in the Commonwealth.

18.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Massachusetts.

## FACTS

### ACT and AEBS Manufacture and Compete for Sales of Cable Ties

19.     ACT was founded in Fitchburg, Massachusetts in 1994 by Kenneth Tomasetti and his wife Donna.  ACT later moved to Gardner, Massachusetts.

20.     ACT is an ISO 9001:2008 registered company that manufactures a wide range of cable ties.  Its products meet UL, CSA, and military standards.  ISO 9001:2008 is an international standard for a quality management system that increases organizational effectiveness and efficiency, promotes a high quality of product, and facilitates customer satisfaction.  An ISO 9001:2008 registered company is one that has been certified by an independent certification body as complying with these quality management principles. Underwriters Laboratories (UL) and Canadian Standards Association (CSA) are safety

consulting and certification organizations that set widely recognized standards for electrical products.

21.     ACT has spent considerable money to insure its products conform with the Federal Trade Commission's definition of "made in the USA."

22.     ACT prides itself on producing virtually all of its cable ties and wiring accessories in the United States.  Its marketing materials specifically identify which of its products are made in the United States.  For those very limited exceptions in which ACT distributes unusual ties or ancillary products made in Taiwan, ACT makes clear to customers on its website and in its marketing communications that those few products are not manufactured in the United States.

23.     In June 2016, ACT completed an expansion of its facilities.  ACT's facility is now 112,000 square feet.  With this expansion, ACT expects to hire 100 new employees in the next 3 years, up from 120 employees as of July 1, 2016, and increase its cable tie production capacity.

24.     ACT possesses 18 injection-molding machines, over 30 molds, and necessary auxiliary equipment to manufacture the cable ties it sells.

25.     ACT produces on average 1.2 billion cable ties a year at its Gardner facility, and has produced as many as but no more than 1.4 billion in a single year.

26.     On information and belief, ACT's facility and equipment are more efficient than those of AEBS and its key employees have more cable tie "know how" than those employed by AEBS.  In fact, AEBS has hired or attempted to hire ACT employees because of AEBS's continuing and ongoing manufacturing problems.  ACT is informed and believes that AEBS could not and will not match ACT's production output of cable ties.

27.     Achieving the maximum of 1.4 billion cable ties in a year required all 15 machines ACT possessed at the time to run at near full capacity, with just enough down time to

allow for required maintenance and operator holidays.  As such, 1.2-1.4 billion is the maximum

sustainable throughput for cable-tie production using the sophisticated equipment ACT

possesses.

28.     AEBS is a direct competitor of ACT for government and private sales of cable

ties and ancillary products.  As recently as June 1, 2016, AEBS claimed to be producing *1.5

billion* cable ties per year in a manufacturing space 30% smaller than ACT's, with 25% fewer

machines, inferior equipment, and less experienced personnel than that of ACT.  That claim is

false and misleading.

29.     AEBS has made conflicting and misleading claims about its production capacity.

For example:

(a)     AEBS states on its website that it has a "State-Of-The-Art 75,000
square foot facility" at 5680 John Givens Road, in Crestview,
Florida.  This is the only manufacturing facility operated by AEBS.
In a November 16, 2015 YouTube video, AEBS represented that it
had a "nearly 100,000 square-foot state-of-the-art facility" in
Crestview.  According to publicly available property records,
AEBS's Crestview facility is actually only approximately 65,317
square feet, and only of approximately 43,112 of that square
footage is for manufacturing; the remaining 22,205 square feet is
office and storage space;

(b)     In a June 1, 2016 press release, AEBS announced that it had
recently "expanded [its] manufacturing plant by 20,000 square
feet."  The property records for 5680 John Givens Road, however,
reveal that AEBS only built a new storage warehouse, and did not
expand its manufacturing facility at all; and

(c)     AEBS represents that its Florida manufacturing facility "operates
24/7/365 and boasts the most advanced production processes in the
U.S."  However, based on publicly available Uniform Commercial
Code ("UCC") filings, AEBS possesses only 11 injection-molding
machines and 22 molds, which, collectively, do not allow "the
most advanced production processes."

30.     Based on information it has gathered and over thirty-five years of experience in cable tie manufacturing, ACT believes that it is impossible for AEBS to produce 1.5 billion cable ties per year (the amount AEBS claims to produce) with 11 injection-molding machines and 22 molds (the equipment AEBS actually possesses), even when operating at maximum workable capacity, and even if it employed manufacturing personnel as experienced as ACT's key employees.  On information and belief, at most, based on the machines disclosed in its UCC filings, AEBS annually can produce no more than 950 million—not 1.5 billion—cable ties in its Crestview facility.  On information and belief, if AEBS in fact is annually producing the number of cable ties it claims, the remaining ties must be produced elsewhere.  Based on substantial investigation, ACT is informed and believes that the remainder of AEBS's claimed annual "production" comes from the disguised foreign imports described herein.

31.     Production volume is directly correlated to the number of injection-molding machine a manufacturer operates and the variety of sizes and tensile-strengths of cable ties that a manufacturer produces.  Cable tie manufacturers possess a variety of molds with different cavitations and part-production capacities, some cold and some hot-running, that are used to produce different sizes and tensile-strengths of cable ties on a more limited number of injection-molding machines.  Changing the mold on an injection-molding machine to produce a different type of cable tie takes time.  In addition to the manual labor required for the switch, if it is a hot-running mold, it must be cooled before it can be removed.  Because of the necessities of machine maintenance and changing molds to make different products, no manufacturer is able to achieve maximum yield on its injection-molding machines.

32.     Assuming 95% utilization (meaning annual average run hours in relation to the theoretical maximum run capacity of the equipment) and 95% yield (meaning the annual average

of molded parts actually produced in relation to the theoretical maximum production capacity), and assuming the use of only the highest-cavity molds AEBS possesses *without* any mold switches, AEBS's 11 machines could produce no more than 1.45 billion cable ties per year. In reality, however, these assumptions are unachievable in combination. No cable tie manufacturer, no matter how skilled and experienced, can achieve a 95% yield *with* the required switching of molds, and no cable tie manufacturer can produce the variety of products AEBS sells *without* switching molds. Therefore, on information and belief, with the equipment AEBS possesses, it can produce no more than 950 million cable ties per year.

33.     What this means is simple: AEBS is incapable of producing all of the cable ties it represents as "Made in the USA" at the volume it purports to produce each year.

***AEBS Falsely Induces Sales by Claiming All of Its Ties Are Made in the United States***

34.     AEBS falsely trumpets that all of its cable ties are "Made in the USA" and misleadingly insists that it has moved away from overseas manufacturing.

35.     On or about June 1, 2016, AEBS compounded its fraud on the U.S. government, other consumers, and competitors by announcing that it was changing its name from "Bay State" to "American Elite Molding." In its press release, AEBS stated that "[t]he word 'American' was chosen to communicate the company's commitment to keeping all manufacturing processes in America. . . . . 'Elite' refers to the company's position as America's leading manufacturer of cable ties." Further, AEBS's founder and Chief Executive Officer, Robert Sires, stated that despite the severe downturn in the construction industry from 2008 to 2010, which industry is a substantial component of the cable tie market (through HVAC and other building trades), AEBS had "had twelve straight years of double digit growth since [Bay State] decided to become an American manufacturer." In a news article published the same day, titled "Bay State renamed

AEBS to reflect 'Made in America' heritage," Mr. Sires explained that "[w]e've seen a real resurgence for 'Made in America.'"  The article reported that the new name would "better reflect[ ] [the company's] identity and will serve it better as [it] grows in the future."  The new sign outside AEBS's Crestview facility could not reflect Mr. Sires' message more clearly.  In giant letters, the sign proclaims: "Made in the USA."  Attached as Exhibit A is an image of this sign.

36.    AEBS's informational and marketing materials are rife with "Made in the USA" references to describe the entire portfolio of products the company offers.  AEBS's website (http://www.baystatecableties.com/index.php) states that it is "proud to offer not only a full line of cable ties, but also related accessories, HVAC duct straps, and custom plastic injection molding services--***all Made in the USA***" (emphasis added).

37.    The cover of Bay State's 2014 product catalog, available on AEBS's website (http://www.baystatecableties.com/files/bsct-cable-ties-catalog.pdf) and select pages of which are attached as Exhibit B, reflects an image of an American flag and the words "Made in the USA," and further emphasizes for consumers that its products are allegedly made domestically by describing Bay State as "America's Leading Manufacturer of Nylon Cable Ties":



38.    Every single page of the catalog (except one describing a part-numbering system) features two logos proclaiming that each type of cable tie is "Made in the USA."

39.    At least three videos publicly available on YouTube unequivocally proclaim that

AEBS's cable ties are made in the United States:

> (a)    an October 7, 2015 video titled "Vision of Progress TV Show &
> Bay State Cable Ties Event," produced by the Economic
> Development Council of Okaloosa County
> (https://www.youtube.com/watch?v=uBetwDy7jn4);
>
> (b)    a November 16, 2015 video titled "Bay State Cable Ties –
> Crestview," produced by RGC Media, Inc.
> (https://www.youtube.com/watch?v=L3FAOFlczS8); and
>
> (c)    a June 14, 2016 video titled "AEBS Molding re-brand marketing
> video," produced by Pioneer Technologies Corporation
> (https://www.youtube.com/watch? v=mTDK_hPnF-8).   In the
> October 7, 2015 video, Mr. Sires himself emphasized that all of
> Bay State's products are made in the United States.

40.    Robert Sires, the controlling owner of AEBS, also owns several other cable tie

businesses, including BuyCableTies.com, LLC, an internet business registered in Massachusetts

with a principal place of business in Florida.

41.    BuyCableTies.com also unequivocally proclaims on its website that, "[a]s always

our products are 'Made in America.'"  Similarly, in its Amazon.com listings of products for sale,

BuyCableTies.com again claims that its products are "Made in the USA for over 10 years."

42.    On information and belief, the only cable ties manufacturing facility Robert Sires

controls is the AEBS facility in Crestview, Florida.

43.    Given the facts described above, the Crestview facility cannot manufacture all of

the cable ties sold by AEBS, let alone by BuyCableTies.com.

44.    Based on AEBS's representations on its website, in its catalog, in YouTube

videos, on the sign at the front of its Crestview facility, and in its and BuyCableTies.com's

myriad marketing materials and public statements, every customer and prospect is assured that

all of AEBS's and BuyCableTies.com's cable ties are produced in the United States.  **But they are not.**

45.     AEBS has no truthful basis for representing directly or through BuyCableTies.com, that all of its cable ties are made in the United States.  First, it is physically impossible for AEBS to produce 1.5 billion cable ties in its U.S. facility, regardless of its recent addition of storage space, because it does not have the equipment to achieve this throughput.  Second, on information and belief, AEBS has consistently and covertly supplemented its domestic production with cable ties made overseas, often funneling them from affiliated intermediaries, then repackaging them to appear as though they have been produced in AEBS's U.S. facility and selling them as supposedly "Made in the USA" to unsuspecting customers and the U.S. government.

*In Truth, AEBS Orders Cable Ties from Asian*
*Manufacturers and Repackages or Relabels Them as Its Own*

46.     Beyond its physical inability to produce the volume AEBS purports to achieve with its machinery, on information and belief, AEBS completely lacks the equipment needed to produce several of the cable tie sizes it advertises as being made in the United States.

47.     In its most recent available product catalog, AEBS listed 48" cable ties as part of its 175 lb. series.  On information and belief, based on publicly available UCC filings, the largest mold AEBS possesses makes a 36", 175 lb. cable tie.  The 48", 175 lb. cable ties allegedly "made in the USA" cannot be made by AEBS.

48.     Instead, on information and belief, the 48" cable ties are imported from China and repackaged as AEBS's cable ties.  Although AEBS's product catalog prominently advertises these 48", 175 lb. cable ties as "Made in USA" and UL Listed (see Exhibit B), it is only after a

13

customer buys and receives his ties that, assuming the customer looks closely at the printing at the bottom of each bag, he discovers that these ties in fact are made in China:



A larger version of this photograph is attached as Exhibit C.  Moreover, the UL card listings for AEBS show that AEBS does not manufacture *any* UL-approved 48" cable ties.

49.    Similarly, based on publicly available UCC filings and UL card listings, AEBS does not possess the molds required to produce the following cable ties it advertises as being made in the United States, and instead imports them from China, repackaging them as made in the USA:

(a)  17", 50 lb. cable tie;

(b)  18", 175 lb. cable tie;

(c)  7", 50 lb. releasable cable tie;

(d)  11", 50 lb. releasable cable tie;

(e)  14", 50 lb. releasable cable tie; and

(f)  48", 175 lb. cable tie.

50.     Since at least 2004 and continuing through the present, on information and belief, AEBS has regularly filled orders with millions, if not <u>billions</u>, of Chinese cable ties and represented to customers that those cable ties were "made in the USA."

51.     According to statements by Mr. Sires, AEBS's Founder and CEO, in an October 7, 2015 interview, AEBS did distribute Chinese-made cable ties when it was located in Massachusetts, but relocated to Crestview, Florida to open its own manufacturing facility and become a "full source manufacturer" of American cable ties.  In the interview, Mr. Sires proclaimed that "all of our products are made in America." Moreover, he stated that "twelve years ago we were just buying products from China and reselling them," but since moving to Florida, the company's significant financial growth has been attributable to having its products "made in America." Mr. Sires boasted that "[o]ur biggest competitors would be China, and we beat 'em, and we beat 'em good."  All of these statements were made with the intent of duping the American consumer, and the U.S. government, into believing that AEBS was fairly competing with other American cable tie manufacturers.  AEBS has now gotten away with this fraud for over ten years.

52.     Since AEBS opened its facility in Florida, on information and belief, it has supplemented production by continuing to import Chinese-made cable ties from at least one company, known as GiantLok.

53.     GiantLok has operated in China, Taiwan, Thailand, and Japan.  It is in the business of manufacturing cable ties and exporting them overseas.  On information and belief, GiantLok was formerly known as Hua Wei and based in Shanghai.  When GiantLok changed its name and relocated its operations to Thailand and Taiwan, many of its employees stayed in Shanghai and began working for a cable tie manufacturer known as All Links Forever.

54.     Based on the sworn testimony of a former AEBS sales representative and former AEBS employees, from at least 2004 through 2007, AEBS reportedly ordered cable ties from Chinese manufacturers when it could not satisfy orders for American made ties due to manufacturing problems with its molds.

55.     When AEBS imported cable ties from China, it removed the ties from the "Made in China" packaging, repackaged them in "Bay State" bags, and marked them as being "Made in the USA" before selling them to AEBS's customers.

56.     AEBS's customers thusly have been led to believe, for at least 12 years, that they were purchasing American-made cable ties, when they were not.

57.     Between 2006 and 2007, AEBS fraudulently shipped millions of Chinese cable ties to customers under the "Bay State" label and marked as "Made in the USA."

58.     On information and belief, AEBS has continued to order from overseas in order to fill "made in USA" customer orders.  In 2011, AEBS received at least two shipments of cable ties – in over 1400 cartons weighing over 17 metric tons – from "GiantLok (Thailand) Co., Ltd. and originating in Thailand.

59.     In 2015, AEBS ordered cable ties through the "private branding" branch of what was then known as Hua Wei (now GiantLok).  On information and belief, GiantLok manufactured these ties in Asia—in China, Taiwan, and/or Thailand—imprinted them with the "Bay State" logo, and packaged them in "Bay State" packaging with an American flag prominently displayed.  This is consistent with AEBS's display of an American flag on every package sold by AEBS.  To do this, GiantLok used a mold with a "Bay State" insert.

60.     On information and belief, the "private branding" branch of GiantLok continues to do business with AEBS, and AEBS continues to procure foreign cable ties and disguise them

as domestically manufactured ties to satisfy customers' orders.  Specifically, on information and

belief, AEBS instructs GiantLok to use AEBS's registered mark on the cable ties and on their

packaging to make them appear as though they have been manufactured by AEBS in the United

States.

61.     Just two months ago, in June 2016, AEBS received from Taiwan another 690

cartons, weighing 7.6 metric tons, of what were described as "Wiring Accessories."

### AEBS Uses an Intermediary To Promote the False Appearance That Imported Cable Ties Are Made in the United States

62.     In addition to importing cable ties directly from GiantLok and Hua Wei, AEBS

funnels imported cable ties from overseas to its unsuspecting customers by using an affiliated

company, Cable Tie Express, LLC ("Cable Tie Express").  This relationship enables AEBS to

deceive consumers into thinking that all the cable ties it sells are made in the United States, when

in fact many are repackaged and relayed by Cable Tie Express from foreign manufacturers.

63.     Cable Tie Express is registered as both a Florida and an Indiana limited liability

company that is also registered to do business in California.  As of November 10, 2015, Cable

Tie Express was registered as having the same principal address as AEBS, in Crestview, Florida.

Cable Tie Express also has a principal place of business in Noblesville, Indiana.

64.     On information and belief, Mr. Sires, the founder and CEO of AEBS, also owns

an interest in Cable Tie Express.  The registered agent identified in the Indiana corporate record

of Cable Tie Express is Mr. Sires.  The registered agent in the Florida corporate record of Cable

Tie Express is Roman Capital LLC, for which Mr. Sires is listed as a managing member.  On

information and belief, Cable Ties Express is owned by Roman Capital LLC.  Roman Capital

LLC owns, on behalf of Bay State (now AEBS), the property at 5680 John Givens Road in

Crestview, which serves as the principal address for both AEBS and Cable Tie Express.

65.     Import records document that Cable Tie Express consistently has imported cable ties from China since at least 2007, through and including July 2016.  In particular, Cable Tie Express received shipments of cable ties from Asia monthly from July 2007 through July 2013, at which point it began receiving shipments often twice a month.  Most recently, Cable Tie Express received shipments on April 5, 2016, April 19, 2016, May 3, 2016, May 31, 2016, June 14, 2016, July 5, 2016, and July 26, 2016.   On information and belief, Cable Tie Express has long-term relationships with overseas cable tie manufacturers, which it leverages to then supply AEBS with the cable ties it needs to satisfy its orders.

66.     As alleged above, AEBS's multi-part scheme to funnel imports through Cable Tie Express and then marketing these imported cable ties as made in the United States has been consistent and ongoing since at least 2006.

### AEBS Has Gained Substantial Unfair Advantages by Its Fraudulent Importation, Marketing and Sales

67.     By lying about the country of origin of its products, AEBS has wrongly won customers and extracted numerous competitive advantages, including the ability to underbid on government and private contracts and enjoy the reputational value of supposedly offering only American-made cable ties.

68.     Cable ties made in China, Taiwan and other Asian countries are of poorer quality than those made in the United States.  The United States Department of Commerce has confirmed that foreign-made product components "may lead to lower product quality, potentially costly produce returns, and legal liability," and thereby create meaningful "product quality risks."  *See* United States Department of Commerce, *Assess Costs Everywhere*, http://acetool.commerce.gov/product-quality (last accessed Aug. 9, 2016) (attached hereto as Exhibit D).  Because imported products are not subject to the same quality control and suffer by

comparison in areas of tensile strength and durability compared to cable ties made in the USA, many customers, including construction contractors and U.S. government purchasers using cable ties for military or high-risk applications, require that the cable ties they purchase be made in the United States.

69.     Given these tangible and intangible benefits, many customers require, and so will pay a premium for, American-made products.  *See Knowing Which Products Are Truly Made in America*, Consumer Reports Magazine (Feb. 2013), *available at* http://www.consumerreports.org/cro/magazine/2013/02/made-in-america/index.htm (attached hereto as Exhibit E).  As this 2013 survey established, over 80% of those Americans who prefer American-made products over identical products made overseas cited "retaining manufacturing jobs and keeping American manufacturing strong in the global economy as very important reasons for buying American," and 60% cited the higher quality of American-made goods as a reason for buying American.  *Id.*  Still, when choosing between two products that are purportedly both made in the United States and presumed to be of comparable quality, consumers, including the U.S. government, will often choose the one at the lower price.

### *AEBS Has Furthered Its Pattern of Misconduct Through Illegal Use of the Mails and Wires, and Through Illegal Trafficking in Counterfeit Goods*

70.      AEBS has furthered its wrongful marketing and sales of foreign-made cable ties as "Made in the USA" through use of the mails and wires, and through illegal trafficking in counterfeit goods.

71.     AEBS furthers its wrongful conduct through use of the wires, in violation of 18 U.S.C. § 1343.  AEBS makes false representations as to the country of origin of its products via the Internet, including on its website and in its online product catalog, and in its placement of bids and acceptance of orders over the Internet.  On information and belief, AEBS also markets

and sells its products over the telephone.  These uses of the wires cross interstate boundaries, as AEBS markets its products nationally and accepts orders from customers across the United States.

72.     AEBS also furthers its wrongful conduct through use of the mails, in violation of 18 U.S.C. § 1341.  On information and belief, AEBS ships products to customers across state lines through the United States Postal Service and invites and receives orders from customers within and outside of Florida by U.S. mail.  In addition, AEBS accepts applications for business accounts (used to place regular orders with AEBS) through the U.S. mail, as evidenced by the Application for a Business Account available on AEBS's website (http://www.baystatecableties.com/files/new_account_credit_application).

73.     On information and belief, AEBS (formerly Bay State Cable Ties) has registered its mark on the principal register in the United States Patent and Trademark Office.

74.     AEBS intentionally traffics in goods knowingly using a counterfeit mark on or in connection with such goods, to wit, AEBS's (and formerly Bay State Cable Ties') mark applied to products manufactured outside of the AEBS Crestview facility and outside of the United States.  AEBS intends and knows that the use of this counterfeit mark is likely to cause confusion, to cause mistake, or to deceive, in violation of 18 U.S.C. § 2320.

75.     In addition, AEBS traffics in packaging indicating that the products contained therein were manufactured by AEBS in its Crestview facility, when they were not.  AEBS intends and knows that the use of this counterfeit mark is likely to cause confusion, to cause mistake, or to deceive, in violation of 18 U.S.C. § 2320 and 18 U.S.C. § 1962.

### *U.S. Government Orders Wrongfully Won By AEBS*

76.      The U.S. government is a major purchaser of cable ties, for use in a variety of military and civilian applications.  By obtaining cable ties from overseas to satisfy orders when domestic production is insufficient, AEBS has been able to underbid its competition on the proposed price per unit when seeking valuable contracts with the U.S. government.

77.      Based on publicly available government contract and procurement records, AEBS has won at least 24 government contracts for cable ties since May 2009, and has fulfilled at least 50 orders pursuant to these contracts, earning a total of at least $895,521.01.   AEBS has submitted bids for these orders via the Internet, and fulfilled some of them, on information and belief, by shipments across state lines via the U.S. mail.  The orders currently known to ACT are as follows:

| Order Date | Tie Descrip. | Qty. | Contract and Order No. | Delivery Date | AEBS Bag Price | Total Amount Paid to AEBS |
|---|---|---|---|---|---|---|
| 08/27/2009 | 5" 40 lb natural | 2,877 | SPM4A609ML807 – 4511783626 | 09/26/2009 | $0.688 | $1,979.38 |
| 02/25/2010 | 5" 40 lb natural | 31,018 | SPM4A610ME164 – 4513480469 | 03/27/2010 | $.0649 | $20,130.68 |
| 06/03/2009 | 14" 50 lb natural | 27,096 | SPM4A609MC832 – 4510985855 | 07/03/2009 | $1.700 | $46,063.20 |
| 07/27/2009 | 14" 50 lb natural | 5,729 | SPM4A609MH574 – 4511473099 | 08/26/2009 | $1.600 | $9,166.40 |
| 08/13/2009 | 14" 50 lb natural | 3,501 | SPM4A609MK176 – 4511676023 | 09/12/2009 | $1.498 | $5,244.50 |
| 08/18/2009 | 14" 50 lb natural | 13,115 | SPM4A609MK376 – 4511686716 | 09/17/2009 | $1.440 | $18,885.60 |
| 09/29/2009 | 14" 50 lb natural | 26,641 | SPM4A609MP980 – 4512113966 | 10/29/2009 | $1.391 | $37,057.63 |
| 05/13/2009 | 14" 120 lb natural | 9,211 | SPM4A609MB527 – 4510817107 | 06/12/2009 | $3.500 | $32,238.50 |
| 07/13/2009 | 14" 120 lb natural | 22,187 | SPM4A609MG379 – 4511345535 | 08/12/2009 | $3.050 | $67,670.35 |
| 07/29/2009 | 14" 120 lb natural | 1,504 | SPM4A609MH875 – 4511497634 | 08/28/2009 | $3.200 | $4,812.80 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 03/25/2011 | 14" 120 lb natural | 10,475 | SPM4A611MHW99 – SPM4A611MHW99 | 04/24/2011 | $3.815 | $39,962.13 |
| 08/24/2011 | 14" 120 lb natural | 8,101 | SPM4A611MPW51 – 4518835669 | 10/08/2011 | $3.699 | $29,965.60 |
| 10/26/2011 | 14" 120 lb natural | 5,479 | SPM4A612MAY54 – 4519472940 | 11/26/2011 | $3.620 | $19,833.98 |
| 12/02/2011 | 14" 120 lb natural | 6,038 | SPM4A612D0043 – 0001 | 01/02/2012 | $3.600 | $21,736.80 |
| 04/23/2012 | 14" 120 lb natural | 4,557 | SPM4A612D0043 – 0002 | 05/29/2012 | $3.600 | $16,405.20 |
| 08/07/2012 | 14" 120 lb natural | 6,040 | SPM4A612D0043 – 0003 | 09/12/2012 | $3.600 | $21,744.00 |
| 09/04/2012 | 14" 120 lb natural | 23,172 | SPM4A612D0043 – 0004 | 10/10/2012 | $3.600 | $83,419.20 |
| 09/04/2012 | 14" 120 lb natural | 983 | SPM4A612D0043 – 0005 | 10/10/2012 | $3.600 | $3,538.80 |
| 10/02/2012 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0006 | 11/07/2012 | $3.600 | $21,740.40 |
| 07/08/2014 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0007 | 08/13/2014 | $3.890 | $23,491.71 |
| 08/05/2014 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0008 | 09/10/2014 | $3.890 | $23,491.71 |
| 09/02/2014 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0009 | 10/08/2014 | $3.890 | $23,491.71 |
| 10/07/2014 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0010 | 11/12/2014 | $3.890 | $23,491.71 |
| 09/07/2015 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0011 | 10/13/2015 | $4.000 | $24,156.00 |
| 10/05/2015 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0012 | 11/10/2015 | $4.000 | $24,156.00 |
| 12/07/2015 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0013 | 01/12/2016 | $4.190 | $25,303.41 |
| 05/18/2009 | 4" 18 lb natural | 8,231 | SPM4A609MB755 – 4510850762 | 06/17/2009 | $0.320 | $2,633.92 |
| 10/26/2009 | 14" 50 lb red | 587 | SPM4A610M2789 – 4512346946 | 11/25/2009 | $1.498 | $879.33 |
| 03/22/2015 | 4" 18 lb UV black | 8,285 | SPE4A615M7776 | 05/06/2015 | $0.459 | $3,802.81 |
| 08/22/2013 | 7" 50 lb UV black | 36,240 | SPE4A613MP281 | 10/07/2013 | $0.867 | $31,420.08 |
| 10/07/2014 | 7" 50 lb UV black | 9,087 | SPE4A615M0508 | 12/08/2014 | $0.930 | $8,450.91 |
| 11/24/2014 | 7" 50 lb UV black | 4,653 | SPE4A615M2407 | 12/24/2014 | $0.910 | $4,234.23 |
| 12/19/2014 | 7" 50 lb UV black | 6,954 | SPE4A615M3853 | 02/02/2015 | $0.910 | $6,328.14 |

| 03/19/2015 | 7" 50 lb UV black | 23,738 | SPE4A615M7746 | 05/04/2015 | $0.890 | $21,126.82 |
| 08/20/2015 | 7" 50 lb UV black | 59,772 | SPE4A615D0260 – 0001 | 10/19/2015 | $0.850 | $50,806.20 |
| 09/26/2013 | 11" 50 lb UV black | 3,297 | SPE4A613D5670 – 0001 | 10/28/2013 | $1.550 | $5,110.35 |
| 06/03/2014 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0002 | 07/07/2014 | $1.550 | $4,208.25 |
| 07/16/2014 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0003 | 08/18/2014 | $1.550 | $4,208.25 |
| 10/30/2014 | 11" 50 lb UV black | 3,759 | SPE4A613D5670 – 0004 | 12/01/2014 | $1.590 | $5,976.81 |
| 11/06/2014 | 11" 50 lb UV black | 3,302 | SPE4A613D5670 – 0005 | 12/08/2014 | $1.590 | $5,250.18 |
| 12/16/2014 | 11" 50 lb UV black | 2,720 | SPE4A613D5670 – 0006 | 01/16/2015 | $1.590 | $4,324.80 |
| 12/31/2014 | 11" 50 lb UV black | 6,288 | SPE4A613D5670 – 0007 | 02/02/2015 | $1.590 | $9,997.92 |
| 04/12/2015 | 11" 50 lb UV black | 3,974 | SPE4A613D5670 – 0008 | 05/13/2015 | $1.590 | $6,318.66 |
| 04/29/2015 | 11" 50 lb UV black | 4,049 | SPE4A613D5670 – 0009 | 06/01/2015 | $1.590 | $6,437.91 |
| 05/27/2015 | 11" 50 lb UV black | 8,904 | SPE4A613D5670 – 0010 | 06/29/2015 | $1.590 | $14,157.36 |
| 10/30/2015 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0011 | 11/30/2015 | $1.630 | $4,425.45 |
| 11/20/2015 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0012 | 01/11/2016 | $1.630 | $4,425.45 |
| 03/10/2016 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0013 | 04/11/2016 | $1.630 | $4,425.45 |
| 03/20/2016 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0015 | 05/02/2016 | $1.630 | $4,425.45 |
| 05/19/2016 | 11" 50 lb UV black | 6,789 | SPE4A613D5670 – 0016 | 06/20/2016 | $1.630 | $11,066.07 |

78.     ACT bid on at least 34 of these orders at a higher bid price because of the cost of

genuine manufacturing in the United States:

| Order Date | Tie Descrip. | Qty. | AEBS Bag Price | ACT Bid Price | Total Amt. Paid to AEBS | Total Amt. Lost by ACT |
|---|---|---|---|---|---|---|
| 08/27/2009 | 5" 40 lb natural | 2,877 | $0.688 | $0.818 | $1,979.38 | $2,353.39 |
| 02/25/2010 | 5" 40 lb natural | 31,018 | $.0649 | $0.818 | $20,130.68 | $25,372.72 |
| 06/03/2009 | 14" 50 lb natural | 27,096 | $1.700 | $1.775 | $46,063.20 | $48,095.40 |
| 07/27/2009 | 14" 50 lb natural | 5,729 | $1.600 | $1.775 | $9,166.40 | $10,168.98 |
| 08/13/2009 | 14" 50 lb natural | 3,501 | $1.498 | $1.775 | $5,244.50 | $6,214.28 |
| 08/18/2009 | 14" 50 lb natural | 13,115 | $1.440 | $1.775 | $18,885.60 | $23,279.13 |

| 09/29/2009 | 14" 50 lb natural | 26,641 | $1.391 | $1.775 | $37,057.63 | $47,287.78 |
| 05/13/2009 | 14" 120 lb natural | 9,211 | $3.500 | $3.698 | $32,238.50 | $34,062.28 |
| 07/13/2009 | 14" 120 lb natural | 22,187 | $3.050 | $3.425 | $67,670.35 | $75,990.48 |
| 07/29/2009 | 14" 120 lb natural | 1,504 | $3.200 | $3.425 | $4,812.80 | $5,151.20 |
| 03/25/2011 | 14" 120 lb natural | 10,475 | $3.815 | $3.870 | $39,962.13 | $40,538.25 |
| 08/24/2011 | 14" 120 lb natural | 8,101 | $3.699 | $3.775 | $29,965.60 | $30,581.28 |
| 10/26/2011 | 14" 120 lb natural | 5,479 | $3.620 | $3.775 | $29,965.60 | $20,683.23 |
| 12/02/2011 | 14" 120 lb natural | 6,038 | $3.600 | $3.775 | $21,736.80 | $22,793.45 |
| 04/23/2012 | 14" 120 lb natural | 4,557 | $3.600 | $3.775 | $16,405.20 | $17,202.68 |
| 08/07/2012 | 14" 120 lb natural | 6,040 | $3.600 | $3.775 | $21,744.00 | $22,801.00 |
| 09/04/2012 | 14" 120 lb natural | 23,172 | $3.600 | $3.775 | $83,419.20 | $87,474.30 |
| 09/04/2012 | 14" 120 lb natural | 983 | $3.600 | $3.775 | $3,538.80 | $3,710.83 |
| 10/02/2012 | 14" 120 lb natural | 6,039 | $3.600 | $3.775 | $21,740.40 | $22,797.23 |
| 07/08/2014 | 14" 120 lb natural | 6,039 | $3.890 | $4.083 | $23,491.71 | $24,657.24 |
| 08/05/2014 | 14" 120 lb natural | 6,039 | $3.890 | $4.083 | $23,491.71 | $24,657.24 |
| 09/02/2014 | 14" 120 lb natural | 6,039 | $3.890 | $4.083 | $23,491.71 | $24,657.24 |
| 10/07/2014 | 14" 120 lb natural | 6,039 | $3.890 | $4.083 | $23,491.71 | $24,657.24 |
| 09/07/2015 | 14" 120 lb natural | 6,039 | $4.000 | $4.246 | $24,156.00 | $25,641.59 |
| 10/05/2015 | 14" 120 lb natural | 6,039 | $4.000 | $4.246 | $24,156.00 | $25,641.59 |
| 12/07/2015 | 14" 120 lb natural | 6,039 | $4.190 | $4.416 | $25,303.41 | $26,668.22 |
| 05/18/2009 | 4" 18 lb natural | 8,231 | $0.320 | $0.349 | $2,633.92 | $2,872.62 |
| 10/26/2009 | 14" 50 lb red | 587 | $1.498 | $2.628 | $879.33 | $1,542.64 |
| 08/22/2013 | 7" 50 lb UV black | 36,240 | $0.867 | $0.939 | $31,420.08 | $34,029.36 |
| 10/07/2014 | 7" 50 lb UV black | 9,087 | $0.930 | $0.939 | $8,450.91 | $8,532.69 |
| 11/24/2014 | 7" 50 lb UV black | 4,653 | $0.910 | $0.939 | $4,234.23 | $4,369.17 |
| 12/19/2014 | 7" 50 lb UV black | 6,954 | $0.910 | $0.939 | $6,328.14 | $6,529.81 |
| 03/19/2015 | 7" 50 lb UV black | 23,738 | $0.890 | $0.939 | $21,126.82 | $22,289.98 |
| 08/20/2015 | 7" 50 lb UV black | 59,772 | $0.850 | $0.939 | $50,806.20 | $56,125.91 |

79.     ACT was not alone in unsuccessfully bidding against AEBS on these orders.

Based on publicly available government contract and procurement records, two to eleven

competitors *other than* ACT bid on at least 20 of the orders AEBS wrongly won:

| Order Date | Tie Descrip. | Qty. | Contract and Order No. | Number of Competitive Offers |
|---|---|---|---|---|
| 08/27/2009 | 5" 40 lb natural | 2,877 | SPM4A609ML807 – 4511783626 | 6 |
| 07/27/2009 | 14" 50 lb natural | 5,729 | SPM4A609MH574 – 4511473099 | 11 |
| 08/13/2009 | 14" 50 lb natural | 3,501 | SPM4A609MK176 – 4511676023 | 7 |
| 08/18/2009 | 14" 50 lb natural | 13,115 | SPM4A609MK376 – 4511686716 | 8 |
| 09/29/2009 | 14" 50 lb natural | 26,641 | SPM4A609MP980 – 4512113966 | 8 |
| 05/13/2009 | 14" 120 lb natural | 9,211 | SPM4A609MB527 – 4510817107 | 6 |
| 07/13/2009 | 14" 120 lb natural | 22,187 | SPM4A609MG379 – 4511345535 | 8 |
| 07/29/2009 | 14" 120 lb natural | 1,504 | SPM4A609MH875 – 4511497634 | 7 |
| 04/23/2012 | 14" 120 lb natural | 4,557 | SPM4A612D0043 – 0002 | 4 |
| 08/07/2012 | 14" 120 lb natural | 6,040 | SPM4A612D0043 – 0003 | 4 |
| 10/02/2012 | 14" 120 lb natural | 6,039 | SPM4A612D0043 – 0006 | 4 |
| 05/18/2009 | 4" 18 lb natural | 8,231 | SPM4A609MB755 – 4510850762 | 6 |
| 10/07/2014 | 7" 50 lb UV black | 9,087 | SPE4A615M0508 | 12 |
| 11/24/2014 | 7" 50 lb UV black | 4,653 | SPE4A615M2407 | 9 |
| 12/19/2014 | 7" 50 lb UV black | 6,954 | SPE4A615M3853 | 13 |
| 06/03/2014 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0002 | 4 |
| 10/30/2014 | 11" 50 lb UV black | 3,759 | SPE4A613D5670 - 0004 | 4 |
| 11/06/2014 | 11" 50 lb UV black | 3,302 | SPE4A613D5670 – 0005 | 4 |
| 04/12/2015 | 11" 50 lb UV black | 3,974 | SPE4A613D5670 – 0008 | 4 |
| 04/29/2015 | 11" 50 lb UV black | 4,049 | SPE4A613D5670 – 0009 | 4 |

80.     On information and belief, AEBS wrongly won at least 15 of the orders described above through misrepresentations that its products were manufactured in the United States.  On information and belief, AEBS won these contracts through submission of bids over the Internet. These bids were sent with the specific and contemplated purpose of defrauding the U.S. government by leading the procurement officer to believe that the cable ties offered for purchase were made in the United States, when AEBS knew that they would not be.

81.     Specifically, based on publicly available government contract and procurement records, at least the following orders, all won by AEBS, required that the United States be the country of origin and/or the place of manufacture for the ties purchased:

| Order Date | Tie Descrip. | Qty. | Contract and Order No. | AEBS Bag Price | Total Amt. Paid to AEBS |
|---|---|---|---|---|---|
| 08/27/2009 | 5" 40 lb natural | 2,877 | SPM4A609ML807 – 4511783626 | $0.688 | $1,979.38 |
| 06/03/2009 | 14" 50 lb natural | 27,096 | SPM4A609MC832 – 4510985855 | $1.700 | $46,063.20 |
| 07/27/2009 | 14" 50 lb natural | 5,729 | SPM4A609MH574 – 4511473099 | $1.600 | $9,166.40 |
| 08/13/2009 | 14" 50 lb natural | 3,501 | SPM4A609MK176 – 4511676023 | $1.498 | $5,244.50 |
| 08/18/2009 | 14" 50 lb natural | 13,115 | SPM4A609MK376 – 4511686716 | $1.440 | $18,885.60 |
| 09/29/2009 | 14" 50 lb natural | 26,641 | SPM4A609MP980 – 4512113966 | $1.391 | $37,057.63 |
| 05/13/2009 | 14" 120 lb natural | 9,211 | SPM4A609MB527 – 4510817107 | $3.500 | $32,238.50 |
| 07/13/2009 | 14" 120 lb natural | 22,187 | SPM4A609MG379 – 4511345535 | $3.050 | $67,670.35 |
| 07/29/2009 | 14" 120 lb natural | 1,504 | SPM4A609MH875 – 4511497634 | $3.200 | $4,812.80 |
| 05/18/2009 | 4" 18 lb natural | 8,231 | SPM4A609MB755 – 4510850762 | $0.320 | $2,633.92 |
| 10/26/2009 | 14" 50 lb red | 587 | SPM4A610M2789 – 4512346946 | $1.498 | $879.33 |
| 10/07/2014 | 7" 50 lb UV black | 9,087 | SPE4A615M0508 | $0.930 | $8,450.91 |
| 11/24/2014 | 7" 50 lb UV black | 4,653 | SPE4A615M2407 | $0.910 | $4,234.23 |
| 12/19/2014 | 7" 50 lb UV black | 6,954 | SPE4A615M3853 | $0.910 | $6,328.14 |
| 06/03/2014 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0002 | $1.550 | $4,208.25 |
| 11/20/2015 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0012 | $1.630 | $4,425.45 |

82.     Moreover, based on publicly available government contract and procurement records, AEBS specifically represented to the U.S. government that AEBS was the domestic manufacturer of all the goods supplied for at least 11 of the orders described above:

| Order Date | Tie Descrip. | Qty. | Contract and Order No. | AEBS Bag Price | Total Amt. Paid to AEBS |
|---|---|---|---|---|---|
| 08/27/2009 | 5" 40 lb natural | 2,877 | SPM4A609ML807 – 4511783626 | $0.688 | $1,979.38 |
| 06/03/2009 | 14" 50 lb natural | 27,096 | SPM4A609MC832 – 4510985855 | $1.700 | $46,063.20 |

| 07/27/2009 | 14" 50 lb natural | 5,729 | SPM4A609MH574 – 4511473099 | $1.600 | $9,166.40 |
| 08/13/2009 | 14" 50 lb natural | 3,501 | SPM4A609MK176 – 4511676023 | $1.498 | $5,244.50 |
| 08/18/2009 | 14" 50 lb natural | 13,115 | SPM4A609MK376 – 4511686716 | $1.440 | $18,885.60 |
| 09/29/2009 | 14" 50 lb natural | 26,641 | SPM4A609MP980 – 4512113966 | $1.391 | $37,057.63 |
| 05/13/2009 | 14" 120 lb natural | 9,211 | SPM4A609MB527 – 4510817107 | $3.500 | $32,238.50 |
| 07/13/2009 | 14" 120 lb natural | 22,187 | SPM4A609MG379 – 4511345535 | $3.050 | $67,670.35 |
| 07/29/2009 | 14" 120 lb natural | 1,504 | SPM4A609MH875 – 4511497634 | $3.200 | $4,812.80 |
| 10/26/2011 | 14" 120 lb natural | 5,479 | SPM4A612MAY54 – 4519472940 | $3.620 | $19,833.98 |
| 10/26/2009 | 14" 50 lb red | 587 | SPM4A610M2789 – 4512346946 | $1.498 | $879.33 |

83.     In some instances, the government procurement officer managing a solicitation for relevant bids has required compliance with the Buy American Act.  The Buy American Act, codified at 41 U.S.C. §§ 8301-8305, requires that (a) the end product be manufactured in the United States, and (b) more than 50 percent of the cost of all the component parts be manufactured in the United States, with limited exceptions.  Cable ties contain only one component part.  Based on publicly available government contract and procurement records, at least 23 of the orders described above required AEBS to comply with the Buy American Act, and AEBS represented that it had complied with the Act by filling these orders:

| Order Date | Part Descrip. | Qty. | Contract and Order No. | AEBS Bag Price | Total Amount Paid to AEBS |
| --- | --- | --- | --- | --- | --- |
| 02/25/2010 | 5" 40 lb natural | 31,018 | SPM4A610ME164 – 4513480469 | $.0649 | $20,130.68 |
| 06/03/2009 | 14" 50 lb natural | 27,096 | SPM4A609MC832 – 4510985855 | $1.700 | $46,063.20 |
| 07/27/2009 | 14" 50 lb natural | 5,729 | SPM4A609MH574 – 4511473099 | $1.600 | $9,166.40 |
| 08/13/2009 | 14" 50 lb natural | 3,501 | SPM4A609MK176 – 4511676023 | $1.498 | $5,244.50 |

| 08/18/2009 | 14" 50 lb natural | 13,115 | SPM4A609MK376 – 4511686716 | $1.440 | $18,885.60 |
| 09/29/2009 | 14" 50 lb natural | 26,641 | SPM4A609MP980 – 4512113966 | $1.391 | $37,057.63 |
| 05/13/2009 | 14" 120 lb natural | 9,211 | SPM4A609MB527 – 4510817107 | $3.500 | $32,238.50 |
| 07/13/2009 | 14" 120 lb natural | 22,187 | SPM4A609MG379 – 4511345535 | $3.050 | $67,670.35 |
| 07/29/2009 | 14" 120 lb natural | 1,504 | SPM4A609MH875 – 4511497634 | $3.200 | $4,812.80 |
| 03/25/2011 | 14" 120 lb natural | 10,475 | SPM4A611MHW99 – 4517347140 | $3.815 | $39,962.13 |
| 08/24/2011 | 14" 120 lb natural | 8,101 | SPM4A611MPW51 – 4518835669 | $3.699 | $29,965.60 |
| 10/26/2011 | 14" 120 lb natural | 5,479 | SPM4A612MAY54 – 4519472940 | $3.620 | $29,965.60 |
| 12/02/2011 | 14" 120 lb natural | 6,038 | SPM4A612D0043 – 0001 | $3.600 | $21,736.80 |
| 05/18/2009 | 4" 18 lb natural | 8,231 | SPM4A609MB755 – 4510850762 | $0.320 | $2,633.92 |
| 10/26/2009 | 14" 50 lb red | 587 | SPM4A610M2789 – 4512346946 | $1.498 | $879.33 |
| 03/22/2015 | 4" 18 lb UV black | 8,285 | SPE4A615M7776 | $0.459 | $3,802.81 |
| 08/22/2013 | 7" 50 lb UV black | 36,240 | SPE4A613MP281 | $0.867 | $31,420.08 |
| 10/07/2014 | 7" 50 lb UV black | 9,087 | SPE4A615M0508 | $0.930 | $8,450.91 |
| 11/24/2014 | 7" 50 lb UV black | 4,653 | SPE4A615M2407 | $0.910 | $4,234.23 |
| 12/19/2014 | 7" 50 lb UV black | 6,954 | SPE4A615M3853 | $0.910 | $6,328.14 |
| 03/19/2015 | 7" 50 lb UV black | 23,738 | SPE4A615M7746 | $0.890 | $21,126.82 |
| 08/20/2015 | 7" 50 lb UV black | 59,772 | SPE4A615D0260 – 0001 | $0.850 | $50,806.20 |
| 06/03/2014 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0002 | $1.550 | $4,208.25 |

84.     Given the facts described above, AEBS does not have the capacity to produce in its Crestview facility all of the volume and variety of cable ties it supplies.  As a result, on information and belief, AEBS secretly has imported cable ties to meet customer demand.  Yet AEBS has represented to the U.S. government in each of the orders identified in Paragraphs 81 through 83 that the cable ties it would supply to the government were made in the United States or complied with the Buy American Act or both.

85.     In each of the contracts and orders identified in Paragraphs 78 and 79, AEBS wrongfully outbid ACT—which, again, sells to the U.S. government <u>only</u> products made in the United States—as well as other competitors, including, on information and belief, MSC Industrial Direct Co., W.W. Grainger, Inc., International Television Corp. (doing business as ITC Electronics), and Nelco Products.

86.     In addition, in some instances, the government procurement officer managing a solicitation for relevant bids has required compliance with a higher-level quality standard known as ISO 9001:2000.  *See* DLAD 46.202-4(b); FAR 46.202-4(a).

87.     Based on publicly available government contract and procurement records, at least two of the contracts that AEBS won against bids by ACT (and others) and the resulting orders all required compliance with ISO 9001:2000:

| Order Date | Tie Descrip. | Qty. | Contract and Order No. | Delivery Date | AEBS Bag Price | Total Amt. Paid to AEBS |
|---|---|---|---|---|---|---|
| 09/26/2013 | 11" 50 lb UV black | 3,297 | SPE4A613D5670 – 0001 | 10/28/2013 | $1.550 | $5,110.35 |
| 06/03/2014 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0002 | 07/07/2014 | $1.550 | $4,208.25 |
| 07/16/2014 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0003 | 08/18/2014 | $1.550 | $4,208.25 |
| 10/30/2014 | 11" 50 lb UV black | 3,759 | SPE4A613D5670 – 0004 | 12/01/2014 | $1.590 | $5,976.81 |
| 11/06/2014 | 11" 50 lb UV black | 3,302 | SPE4A613D5670 – 0005 | 12/08/2014 | $1.590 | $5,250.18 |
| 12/16/2014 | 11" 50 lb UV black | 2,720 | SPE4A613D5670 – 0006 | 01/16/2015 | $1.590 | $4,324.80 |
| 12/31/2014 | 11" 50 lb UV black | 6,288 | SPE4A613D5670 – 0007 | 02/02/2015 | $1.590 | $9,997.92 |
| 04/12/2015 | 11" 50 lb UV black | 3,974 | SPE4A613D5670 – 0008 | 05/13/2015 | $1.590 | $6,318.66 |
| 04/29/2015 | 11" 50 lb UV black | 4,049 | SPE4A613D5670 – 0009 | 06/01/2015 | $1.590 | $6,437.91 |
| 05/27/2015 | 11" 50 lb UV black | 8,904 | SPE4A613D5670 – 0010 | 06/29/2015 | $1.590 | $14,157.36 |
| 10/30/2015 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0011 | 11/30/2015 | $1.630 | $4,425.45 |

| 11/20/2015 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0012 | 01/11/2016 | $1.630 | $4,425.45 |
| 03/10/2016 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0013 | 04/11/2016 | $1.630 | $4,425.45 |
| 03/20/2016 | 11" 50 lb UV black | 2,715 | SPE4A613D5670 – 0015 | 05/02/2016 | $1.630 | $4,425.45 |
| 05/19/2016 | 11" 50 lb UV black | 6,789 | SPE4A613D5670 – 0016 | 06/20/2016 | $1.630 | $11,066.07 |
| 05/18/2009 | 4" 18 lb natural | 8,231 | SPM4A609MB755 – 4510850762 | 06/17/2009 | $0.320 | $2,633.92 |

88.     On information and belief, AEBS is **not** ISO 9001:2000 certified nor is its manufacturing process ISO 9001:2000 compliant.  It therefore cannot produce ties which meet ISO's higher-level quality standards.  Nonetheless, AEBS has bid on the above-listed U.S. government orders explicitly requiring ISO compliance, and wrongfully has won them.

89.     In sum, based only on the orders identified in paragraphs 77 to 87 above, AEBS's wrongful conduct has proven richly profitable.  Through the 24 cable-tie contracts that AEBS has obtained with the U.S. government since May 2009 (the subset that ACT is aware of),  AEBS has: (i) won at least 50 orders, totaling at least $895,521.01, by underbidding ACT and other competitors which manufacture their cable ties in the United States; (ii) won at least 15 orders through false representations that the country of origin and/or place of manufacture of AEBS's cable ties is the United States, totaling at least $254,278.59; (iii) won at least 11 orders through false representations that AEBS was the domestic manufacturer of all of the goods supplied, totaling at least $243,831.67; (iv) won at least 23 orders through false representations that AEBS complied with the Buy American Act, totaling at least of $496,790.48; and (v) won at least 16 orders through false representations that AEBS complied with ISO 9001:2000, totaling at least $97,392.28.  ACT is informed and believes that these government orders are but a slice of the larger profits which AEBS wrongly has extracted by similar representations to private-sector customers as well.

### *Other Customers and Competitors Have Been Victimized by AEBS*

90.     Many private customers also prefer to purchase products made in the United States, or have other contracts or subcontracts requiring them to purchase products made in the United States.  McMaster-Carr, a distributor, is one such customer that prefers, and in some instances, requires American-made products.  ACT is informed and believes that American manufacture is material to the purchasing decisions of numerous other cable tie customers, including, but not limited to, 3M, Grote, Burndy and Optimas.

91.     By its self-perpetuating cycle of secret importation, counterfeit labelling or repackaging, and false advertising, AEBS offers a lower price per unit and thereby has been— and continues to be—able to wrongfully win contracts from these unsuspecting customers and to outbid competitors which actually do sell American-made products.

### *ACT Has Suffered Economic Losses as a Direct and Proximate Result of AEBS's Misconduct*

92.     Manufacturing products in the United States is often more costly than manufacturing them overseas, where human labor and real estate are typically cheaper.  *See Just How Cheap Is Chinese Labor?*, Bloomberg (Dec. 12, 2004), http://www.bloomberg.com/news/articles/2004-12-12/just-how-cheap-is-chinese-labor (attached hereto as Exhibit F). Representing that a product is "Made in the USA" when it is not therefore often allows a supplier to sell a product at a lower price or earn a greater profit on a product than it would have earned had the product actually been manufactured in the United States—or both.

93.     ACT cannot fairly compete with a supplier which consistently misrepresents the country of origin of its cable ties.

94.     At least one former customer of ACT recently has confirmed that it stopped buying cable ties from ACT because of its prices, even though the customer stated that it has "always considered [ACT's] products as the best quality available in the market, period."

95.     Based solely on the orders described in Paragraph 78, on which ACT bid but AEBS wrongly won, ACT has lost at least $859,430.43 in revenue over the last seven years because of AEBS's pattern of concealment and fraud.

96.     In addition, ACT has lost revenue from many private-customer contracts, and AEBS has earned revenue from these contracts, by reason of AEBS's pattern of secret importation, false labeling or repackaging, and false representations.  For example, McCaster-Carr, which prefers American products, does not order certain cable ties from ACT because the pricing is too high.  The full amount of AEBS's ill-gotten revenue cannot be calculated absent discovery.

97.     AEBS has successfully deceived its competitors and its customers, including the U.S. government (and its military operations), into believing that all of AEBS's products are made in the United States, when they are not.  The depth of AEBS's deceit has impeded the discovery of its full extent.  ACT therefore has submitted a FOIA request for documents reflecting AEBS's representation that the cable ties it sells to the U.S. government are made in the United States.  More documents confirming that many of AEBS's cable ties are not in fact manufactured in the United States are exclusively within the possession and control of AEBS.  With discovery, ACT can and will obtain additional corroboration for the assertions it necessarily has made upon information and belief herein.

## CLAIMS

## COUNT I

### (Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))

98.     ACT restates and incorporates by reference Paragraphs 1 through 97 of this Complaint as if fully set forth herein.

99.     At all relevant times, AEBS is and was a person within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(3) and 1962(c).

100.     At all relevant times, AEBS, Cable Tie Express, BuyCableTies.com, LLC, and GiantLok f/k/a Hua Wei have constituted an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).   This enterprise continues to exist and operate.

101.     As alleged above, this enterprise is engaged in, or its activities affect interstate commerce.

102.     At all relevant times, this enterprise coordinated its activities and functioned as a continuing unit, with the common purposes of, among other things, importing cable ties into the United States from overseas, branding and packaging or repackaging them to suggest that they are made by AEBS and therefore made in the United States, and inducing the U.S. government and private companies to purchase goods from AEBS which purportedly had been manufactured in the United States or which purportedly met ISO 9001:2000 or UL standards.

103.     From early 2009 to the present, AEBS has conducted or participated, directly and indirectly, in the conduct of this enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c).  To the extent known at this time, and as alleged in Paragraphs 28 through 97 of this Complaint, that

pattern of racketeering activity includes, but is not limited to: (a) acts of mail fraud in violation of 18 U.S.C. § 1341; (b) acts of wire fraud in violation of 18 U.S.C. § 1343; and (c) acts of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320.

104.    These acts have been and continue to be related within a multi-faceted pattern of illegal importation, branding, packaging or repackaging, marketing, bidding and sales.  They have targeted an array of victims, including the U.S. government, private customers, and the general public.  These acts also have shared the overarching purpose of illegally benefiting AEBS by fraudulently increasing its sales and customer base, and enhancing its reputation.

105.    Because these acts of racketeering have spanned at least seven years, and continue to deceive the government and private customers, and to illegally benefit AEBS, they are not isolated or long-ago completed events.  Instead, they pose a continuing threat of criminal activity.

106.    By reason of AEBS's violations of 18 U.S.C. § 1962(c), ACT, among others, has been deprived of substantial monies and thereby injured in its business or property, in an amount to be determined at trial, but no less than $895,521.01.  These damages were a direct, proximate, and foreseeable result of AEBS's violations of 18 U.S.C. § 1962(c).

107.    Under the provisions of 18 U.S.C. § 1964(c), ACT is entitled to bring this action and recover treble damages, the costs incurred in bringing this lawsuit, and attorneys' fees.

## COUNT II

### (Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a))

108.    ACT restates and incorporates by reference Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    At all relevant times, AEBS is and was a person within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(3) and 1962(c).

110.    At all relevant times, AEBS, Cable Tie Express, LLC, BuyCableTies.com LLC and Technology Plastics LLC have constituted and constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) and 1962(a).  This enterprise continues to exist and operate as a continuing unit with the common purposes of, among other things, undercutting competitors and unfairly winning customers and contracts in the markets for cable ties or molded plastic products.

111.    As alleged above, this enterprise is engaged in, or its activities affect, interstate commerce.

112.    On information and belief, AEBS has invested, and continues to invest, directly or indirectly, income derived from the above-alleged pattern of racketeering activity, or the proceeds of such income, in the establishment or operation of this enterprise.

113.    Specifically, AEBS has earned proceeds from its pattern of fraudulent importation, labeling, packaging or repackaging, and marketing.  In turn, AEBS has invested, and continues to invest, these proceeds in this enterprise's ongoing operations to strengthen its commercial relationships with both customers and prospects, thereby furthering its illegal activity and wrongfully bolstering its market position and its ability to under-cut current competitors and bidders in the future.  In addition, on information and belief, AEBS has invested and continues to invest proceeds from this pattern of racketeering activity in expanding this enterprise's manufacturing and sales facilities, to inevitably enable them to produce or sell more cable ties or molded plastic products and perpetuate their methods of unfair competition.

114.    These actions serve to undercut this enterprise's and each of its members' competitors (including but not limited to ACT) which have not engaged in illegal conduct to finance their genuinely American manufacturing operations.  By reason of AEBS's investment of racketeering income in this enterprise, ACT and others have been placed at an unfair disadvantage in competing for government and private contracts for cable ties or molded plastic products, have been unable to fairly compete with this enterprise or its members in those markets, and have been separately injured in their business or property as a result.  For example, as a result of AEBS's investment of its ill-gotten gains in its Crestview facility, AEBS is able to invest in equipment and personnel that ACT and other competitors cannot afford to acquire as quickly because of the higher operating costs of actually producing their cable ties in the United States.  This self-perpetuating cycle ensures that this enterprise and each of its members maintain –and will continue to maintain – an unfair competitive advantage over all other American manufacturers and will continue to undercut the relevant markets.  That cycle thereby poses a continuing threat of criminal activity.

115.    By reason of AEBS's violations of 18 U.S.C. § 1962(a), ACT, among others, has been deprived of substantial monies and thereby injured in its business or property in an amount to be determined at trial.  These damages were a direct, proximate, and foreseeable result of AEBS's violations of 18 U.S.C. § 1962(a).  ACT therefore is entitled to bring this action and recover treble damages, the costs incurred in bringing this lawsuit, and attorneys' fees.

## COUNT III

### (Violation of Section 43(a) of the Lanham Act, 41 U.S.C. § 1125(a)(1))

116.    ACT restates and incorporates by reference Paragraphs 1 through 115 of this Complaint as if fully set forth herein.

117.     AEBS sells and transports cable ties through interstate commerce.

118.     ACT and AEBS are companies in direct commercial competition. AEBS's products are targeted to the exact same consumers as ACT targets its products. AEBS and ACT's products serve the same functions.

119.     AEBS advertises that its products, namely cable ties, are made in the United States. AEBS's website, product catalog, advertisements, and other materials contain false and/or misleading descriptions and representations of fact in connection with its sale, offering for sale, advertising, marketing, and promotion of its cable tie products, which falsely or misleadingly describe or represent the country of origin of such goods. On information and belief, AEBS does not manufacture all or virtually all of its cable ties in the United States. As described more fully above, AEBS does not possess the machinery needed to fulfill all of its orders. Instead, as alleged above, AEBS contracts with overseas manufacturers, either directly or indirectly, to satisfy its orders.

120.     These advertising and marketing materials are being displayed and distributed in interstate commerce.

121.     AEBS's rampant use of the term "Made in the USA" without discernment for which products are in fact made in the United States is intentionally designed to deceive, and has deceived, advertisers and consumers, including the U.S. government (and its military operations), to believe that all of the products offered by AEBS are made in the United States. AEBS's advertisements and representations are designed to influence consumers' purchasing decisions. Whether a product is made in the United States can be a material and determining factor in a consumer's choice among competing products.

122.    AEBS's conduct is willful, deliberate, intentional and in bad faith.  Its blatant and continuing use of the term "Made in the USA" constitutes willful, intentional, unfair competition.

123.    As a direct and proximate result of AEBS's actions, consumers are likely to be confused or mistaken, or deceived, as to the origin and source of AEBS's products.

124.    Upon information and belief, AEBS has earned and will continue to earn profits as a direct result of its representation that its products are "Made in the USA."

125.    AEBS's unlawful actions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

126.    As a direct and proximate result of the willful and wanton conduct of AEBS, ACT has been injured and will continue to suffer harm in the Commonwealth, in the United States, and worldwide.

127.    As a direct and proximate result of AEBS's false and misleading representations, ACT has been damaged in an amount to be determined at trial, but no less than $895,521.01.

128.    The foregoing conduct, in particular AEBS's bad faith and willful conduct in making false representations to the U.S. government in its bids for military contracts, renders this case exceptional, entitling ACT to treble damages based and an award of reasonable attorneys' fees.

129.    As a direct and proximate result of AEBS's conduct, ACT is entitled to injunctive relief enjoining and restraining AEBS from using the term "Made in the USA" except as to those specific products that are in fact manufactured in the United States.

130.    ACT has suffered and, unless AEBS is enjoined, will likely continue to suffer irreparable injury by reason of the false and misleading claims made by AEBS about its products.

131.    ACT has no adequate remedy at law.

## COUNT IV

### (Intentional Fraud)

132.    ACT restates and incorporates by reference Paragraphs 1 through 131 of this Complaint as if fully set forth herein.

133.    At all relevant times hereto, AEBS has represented and continues to represent that all or virtually all of its products are made in the United States.  It makes this representation to ACT and to consumers, purchasers, competitors, market analysts, product regulators, and the general public, on its website, in its product catalog, in press releases, on the sign of its Crestview facility, and in its bids for orders from the U.S. government.

134.    This representation is false.

135.    AEBS knew this representation was false when made.

136.    AEBS made this representation for the purpose of inducing consumers to purchase AEBS's products, and for the purpose of deceiving competitors as to the origin of its products.  The country of origin of a product is a material fact in purchasing and competitive pricing decisions.

137.    ACT relied upon AEBS's representation of the country of origin of its products in assessing its competition and setting pricing.  In believing that AEBS manufactured all of its products in the United States, ACT made business decisions based on a flawed assessment of the

competitive marketplace. These decisions were made to ACT's detriment because, among other reasons, it lost many bids for orders to AEBS.

138.    As a result of AEBS's fraudulent conduct, ACT has been damaged and is entitled to recover from AEBS in an amount to be determined at trial, but no less than $895,521.01.

<u>**COUNT V**</u>

**(Negligent Misrepresentation)**

139.    ACT restates and incorporates by reference Paragraphs 1 through 138 of this Complaint as if fully set forth herein.

140.    At all relevant times hereto, in its course of its business, AEBS has represented and continues to provide false information that all or virtually all of its products are made in the United States. It provides this false information to ACT and to consumers, purchasers, competitors, market analysts, product regulators, and the general public, on its website, in its product catalog, in press releases, on the sign of its Crestview facility, and in its bids for orders from the U.S. government.

141.    This false information is and was supplied to guide such persons in their business decisions, including but not limited to in purchasing cable ties and in setting prices for cable ties.

142.    AEBS's false representation has caused and continues to cause ACT and other competitors to lose bids because they cannot compete with a supplier whose products are allegedly made in the United States, but are not, and therefore are offered at a price point that is unachievable for American manufacturers.

143.    ACT and other competitors have justifiably relied on AEBS's false representation in making business decisions and assessing the competitive marketplace. Consumers, purchasers, and the general public have justifiably relied on AEBS's false representation in

making their own business and purchasing decisions.  These decisions have had and continue to have a detrimental effect on ACT and other competitors whose products are American-made.

144.    AEBS knew that not all of its cable ties were manufactured in its Crestview facility, and that many of its cable ties were actually made overseas.  AEBS failed to exercise reasonable care or competence in communicating to consumers, competitors, product regulators, and the general public which of its products are not in fact made in the United States.

145.    As a result of AEBS's misrepresentation, ACT has suffered a pecuniary loss in an amount to be determined at trial, but no less than $895,521.01.

## COUNT VI

### (Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213)

146.    ACT restates and incorporates by reference Paragraphs 1 through 145 of this Complaint as if fully set forth herein.

147.    ACT is a person within the meaning of Fla. Stat. § 501.211(2).

148.    AEBS had engaged in trade and commerce within the meaning of Fla. Stat. § 501.203(8).

149.    AEBS, acting individually or in concert with others, has engaged in representations, acts, practices or omissions in trade or commerce which are material, and which are likely to mislead consumers and purchasers acting reasonably under the circumstances with regard to their choices of cable ties.  In addition, AEBS has engaged in acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers.

150.    AEBS willfully engaged in deceptive and unfair acts and practices in that AEBS knew or should have known that the methods, acts or practices alleged herein were deceptive,

41

unfair, or unconscionable, or prohibited by law.  AEBS knew that it was not true that all or virtually all of its products were made in the United States.  On information and belief, AEBS willfully and knowingly made false representations as to the country of origin of its products in order to compete unfairly for purchase orders from customers, including the U.S. government.

151.    The actions of AEBS, including, but not limited to representing and advertising to competitors and consumers that all or virtually all of its products are made in the United States, as described above, constitute deceptive and unfair acts and practices that perpetrate a fraud upon consumers and competitors in violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat., §§ 501.201 *et seq.*

152.    Such conduct on the part of AEBS is willful, intentional, and unconscionable, thereby causing irreparable harm and actual damages to ACT and entitling ACT to damages in an amount to be determined at trial, but no less than $895,521.01; court costs; and reasonable attorneys' fees.

153.    As a direct and proximate result of AEBS's conduct, ACT is entitled to injunctive relief enjoining and restraining AEBS from using the term "Made in the USA" except as to those specific products that are in fact manufactured in the United States.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ACT prays that this Court enter judgment in its favor and against Defendant AEBS as follows:

(i)      Damages and restitution in an amount to be determined at trial but  in excess of $895,521.01;

(ii)     Treble damages pursuant to 15 U.S.C. § 1117 (Lanham Act) and 18 U.S.C. § 1964(c) (RICO);

(iii)    Disgorgement of Defendant's profits pursuant to 15 U.S.C. § 1051 *et seq.* (Lanham

Act);

(iv)    Attorneys' fees, costs, and disbursements pursuant to 15 U.S.C. § 1117 (Lanham Act)

and 18 U.S.C. § 1964(c) (RICO);

(v)    Punitive and exemplary damages in an amount to be determined at trial;

(vi)    Pre-judgment and post-judgment interest;

(vii)    Injunctive relief prohibiting Defendant from advertising that its cable ties are "Made

in the USA" and fully ISO-compliant; and

(viii)    Such other and further relief as may be just, equitable, and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.


Respectfully submitted,


**ADVANCED CABLE TIES, INC.,**

By its attorneys,


/s/ *Peter A. Biagetti*
Peter A. Biagetti (BBO # 042310)
Mathilda S. McGee-Tubb (BBO # 687434)
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000
PABiagetti@mintz.com
MSMcGee-Tubb@mintz.com


Dated:  September 1, 2016